UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME DAVIS and PRISCILLA HUMPHREY, etc., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN SHOE COMPANY, INC., etc., et al.,<br><br>Defendants. | Case No.: 1:13-cv-01211-LJO-BAM<br><br>FINDINGS AND RECOMMENDATIONS REGARDING (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS<br><br>(Docs. 68, 70)<br><br>FOURTEEN-DAY DEADLINE |

Plaintiffs Jerome Davis, Priscilla Humphrey, Jennifer Carrow and Sabrina Rowell, individually and on behalf of all others similarly situated, seek final approval of a class action settlement reached with Defendant Brown Group Retail, Inc. d/b/a Famous Footwear (erroneously sued as Brown Shoe Company, Inc.). Plaintiffs also seek an award of attorneys' fees, costs and expenses, along with approval of class representative incentive awards. The Court heard oral argument on September 18, 2015. Counsel Raul Perez appeared in person for Plaintiffs. Counsel Michael Hansen appeared in person for Defendant.

Following the hearing, the Court requested simultaneous, supplemental briefing related to the request for final approval and the request for attorneys' fees. Defendant filed a supplemental

1

memorandum related solely to final approval of the settlement on October 1, 2015. (Doc. 77.) Plaintiffs filed a supplemental memorandum on October 2, 2015, regarding both final approval of the settlement agreement and the request for attorneys' fees. (Doc. 78.)

Having carefully considered the parties' submissions, oral argument and the entire record in this case, the Court recommends (1) Plaintiffs' Motion for Final Approval of Class Action Settlement be GRANTED; and (2) Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses and Class Representative Incentive Awards be GRANTED IN PART and DENIED IN PART. (Docs. 68-70.)

## BACKGROUND

On June 4, 2013, Plaintiffs initiated this wage and hour class action against Defendant Brown Group Retail, Inc. d/b/a Famous Footwear and Defendant Mike West in Merced County Superior Court. Defendant answered the complaint on July 31, 2013, and subsequently removed the action to this Court on August 2, 2013. (Doc. 1.)

Plaintiffs filed an amended complaint on August 4, 2014, and Defendants answered on August 13, 2014. (Docs. 28, 30.) Thereafter, on August 20, 2014, Plaintiffs sought voluntary dismissal of Defendant Mike West from this action, which the Court granted on October 6, 2014. (Docs. 31, 45.)

On October 6, 2014, Plaintiffs filed a motion seeking class certification. (Doc. 46.) Subsequently, the parties requested and received continuations of all dates associated with the pending motion for class certification because they had a reached a preliminary agreement on a proposed settlement following participation in mediation. (Docs. 48-51.)

On February 20, 2015, Plaintiffs moved for preliminary approval of the class action settlement, which Defendant Brown Group Retail, Inc. joined. (Docs. 52, 54.) On May 12, 2015, the Court preliminarily approved the class action settlement. The preliminary approval provided for:

(1) Conditional certification of a settlement class;
(2) Preliminary approval of the Settlement Agreement, including all terms and conditions, the settlement amount and the allocation of payments;
(3) Appointment of:
    (a) class representatives:    Jerome Davis, Pricilla Humphrey, Jennifer Carrow and Sabrina Rowell

      (b) class counsel:        Capstone Law APC

      (c) claims administrator:    Simpluris, Inc.

(4)    Approval of the Notice of Class Action Settlement and Claim Form; and

(5)    Deadlines for class notice, requests for exclusion from the class and objections to the settlement.

(Doc. 66.) By stipulation of the parties, the Court also granted Plaintiffs leave to file their proposed Second Amended Complaint, which added Jennifer Carrow and Sabrina Rowell as additional named plaintiffs. (Docs. 66, 67.) Defendant's Answer to the First Amended Complaint was deemed an Answer to the Second Amended Complaint.

Plaintiffs now seek final approval of the class action settlement, including approval of the following:

(1)    the settlement as fair, adequate and reasonable, and in the best interests of the settlement class;

(2)    the class representatives as suitable;

(3)    the settlement of civil penalties in the amount of $5,000, with payment of $3,750 to the California Labor and Workforce Development Agency and allocation of $1,250 to participating class members;

(4)    claims administration expenses in the amount of $46,000 to Simpluris, Inc.;

(5)    payment to class members pursuant to the procedures in the Settlement Agreement;

(6)    incentive awards for each class representative ($7,000 each to Jerome Davis and Priscilla Humphrey; and $2,500 each to Jennifer Carrow and Sabrina Rowell);

(7)    attorneys' fees and costs ($450,000 in fees and $32,680 in costs); and

(8)    entry of judgment.

(Docs. 68, 70.)

**I.    Final Approval of the Settlement**

    **A. Legal Standard**

When "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the

settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Generally, review of a proposed settlement proceeds in two phases. *True v. American Honda Motor Co.*, 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed is within the range of possible approval and whether or not notice should be sent to class members. *Id.* at 1063. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. *True*, 749 F.Supp.2d at 1063. "In evaluating a proposed settlement, '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998)).

### B. Discussion

#### 1. Terms of Settlement

The class consists of all persons who are or were employed by Defendant in a non-exempt, hourly-paid position at any of Defendant's California Famous Footwear retail locations from June 4, 2009, to May 12, 2015. Under the terms of the settlement, the parties have agreed that Defendant will pay a gross settlement amount of up to $1,500,000 (Settlement Agreement ¶ 7.1). The $1,500,000 amount includes:

(a) a net settlement amount of no less than $400,000 paid to participating class members; each class member's share of the settlement will be proportional to the total number of weeks he or she worked during the class period;

(b) payment to class counsel of up to 30% of the gross settlement amount (not to exceed $450,000) for attorneys' fees, along with litigation costs up to $35,000;

(c) payment of $7,000 each to named plaintiffs Jerome Davis and Priscilla Humphrey;

4

1  (d) payment of $2,500 each to named plaintiffs Jennifer Carrow and Sabrina Rowell;

2  (e) civil penalties in the amount of $5,000, with 75% or $3,750 paid to the California Labor and Workforce Development Agency. The remaining 25% or $1,250 will be allocated to participating class members; and

(f) payment of the costs of administration to Simpluris, Inc. not to exceed $60,000.

(Doc. 52-1 at 25-27.)

### 2. Notice to Class Members

The Court finds that the notice to the settlement class, as preliminarily approved by the Court on May 12, 2015, provided the best practicable notice to the class members and satisfied the procedures of Due Process. In particular, the Class Notice provided a summary of the litigation and described the key terms of the Settlement Agreement, including the gross settlement fund of $1,500,000, the class representative incentive awards, $450,000 in attorneys' fees and $35,000 in costs, civil penalties of $5,000, and Claims Administrator's fees not to exceed $60,000. The Class Notice also indicated that a total of approximately $952,250 would be made available for payments to class members (the "net settlement amount"), and that Defendant would keep any unclaimed funds. The Class Notice clarified that if class members claimed less than $400,000 from the net settlement amount, then each participating class member's claim would be increased proportionally to ensure that no less than $400,000 is paid to class members who submit claim forms. (Doc. 52-1 at 43-44.) In addition to a description of the Settlement Agreement, the Class Notice advised class members about the submission of claim forms, the calculation of individual settlement payments, class members' options under the Settlement Agreement, and class members' ability to submit objections for the Court's consideration when deciding whether to approve the settlement. (Doc. 52-1 at 44-45.) The Class Notice also included an accompanying Claim Form for submission by class members, with both documents comprising the notice packet sent to putative class members. (Doc. 62 at 43.)

Consistent with preliminary approval of the settlement, Defendant provided the Claims Administrator, Simpluris, Inc., with a mailing list containing the last known addresses for class members. The Claims Administrator processed and updated the mailing addresses utilizing the National Change of Address Database maintained by the U.S. Postal Service. On June 15, 2015, the

notice packet previously approved by the Court was mailed to the 4,068 potential class members by First Class Mail. On July 15, 2015, the Claims Administrator mailed postcards to non-responsive class members with a reminder regarding the claims deadline. For notice packets returned by the post office, the Claims Administrator performed skip traces for those without forwarding addresses. 510 notice packets were re-mailed because a better mailing address was found. Altogether, 126 of the notice packets were unable to be delivered because a better mailing address could not be found. (Doc. 70-2, Declaration of Christina Francisco ("Francisco Dec."), ¶¶ 3-5.) As of August 13, 2015, the Claims Administrator had processed a total of 996 valid claim forms. (*Id*. at ¶ 6.)

The Court finds that the procedures employed were adequate to satisfy Due Process.

### 3. Class Certification

Based on the showing made by the parties in support of the motion for preliminary approval and the motion for final approval, the Court finds that the parties have met their burden as to the prerequisites for class certification as set forth in Rule 23(a) and (b)(3).

Specifically, the complaint alleged an estimated 5,000 hourly, non-exempt employees have worked in Defendant's California retail locations from June 4, 2009, until the date of preliminary approval, which satisfies the numerosity requirement. As to commonality, the class presents common questions of law and fact arising out of Defendant's uniform policies and practices allegedly resulting in violations of California wage and hour laws. Defendant's policies and practices at issue related to (1) assigning one on-duty manager for shifts of five hours or longer, (2) off-the-clock security checks, (3) regular rate of pay calculations, and (4) uniform wage statements that allegedly resulted in violations of California law. (Doc. 52 at 29.) The typicality requirement is fulfilled because Plaintiffs' claims arise from the same policies and practices similarly impacting all class members. The adequacy requirement is met because Plaintiffs will fairly and adequately represent the interests of the class, and the attorneys at Capstone Law are experienced class counsel knowledgeable in the applicable areas of the law.

As to the requirements of Rule 23(b)(3), the Court finds that common issues predominate over individual issues. In particular, Defendant's policies and practices apply class-wide, and resolution through a single class action is superior to other available methods for fairly and efficiently

1 adjudicating the controversy. Other alternatives to a single class action, such as individual complaints
2 filed with Labor and Workforce Development Agency, would have been ineffective in addressing the
3 issues on a class-wide basis.

### 4. Settlement Approval Factors Support the Agreement

A proposed class action settlement may be approved if the Court, after class members have an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). Further, the Ninth Circuit has identified a non-exhaustive list of factors that a district court may consider when assessing whether a class action settlement agreement meets this standard: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Rodriguez*, 563 F.3d at 963. Additionally, where the settlement occurs before formal class certification, the Court must also ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-947 (9th Cir. 2011) (internal citations omitted).

As discussed below, the Court finds that the proposed settlement is fair, reasonable and adequate, and recommends final approval.

<u>The Strength of Plaintiffs' Case</u>

The first factor, the strength of Plaintiffs' case, favors settlement. Plaintiffs acknowledge significant challenges posed by continued litigation. Based on legal uncertainties regarding class certification in wage and hour cases, even a relatively strong case on the merits may not satisfy the standards for certification. Defendant confirms that recent case law, including *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct. 2541 (2011), and *Brinker Restaurant Corp v. Superior Court*, 53 Cal.4th 1004 (Cal. 2012) created obstacles to Plaintiff's ability to certify a class, particularly with respect to meal and rest break claims. (Doc. 77 at 9.) Additionally, Plaintiffs faced challenges with respect to their substantive claims. Plaintiffs assert that these realities, added to the risk of continued

ligation, militate in favor of settlement. The Court agrees. Given the nature of the claims, this factor weighs in favor of settlement.

<u>The Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

For the same reasons discussed above, the second factor, the risk, expense, complexity and likely duration of further litigation, favors settlement. Plaintiffs admit that there would be significant risks in continued litigation. There was no guarantee of class certification relating to legal issues in this case, and denial of certification would have considerably reduced the value of this case. Plaintiffs further contend that the relief offered by the settlement is particularly notable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases and is arguably superior to the relief the class members might have obtained after a successful trial. Class members will not have to wait for relief, bear the risk of class certification or the possibility of Defendant prevailing at trial. (Doc. 70 at 8.) Additionally, it is evident that Defendant has, and would continue to, vigorously defend against Plaintiffs' claims. Indeed, Defendant points out that even if Plaintiffs were to somehow prevail at a trial, the prospect of an extended appellate process favors a settlement. (Doc. 77 at 10.)

<u>The Amount Offered in Settlement</u>

Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of up to $1,500,000, with a net settlement payment of no less than $400,000 to participating class members. Plaintiffs have represented that the average payment to class members is approximately $400. (Doc. 70 at 7.) According to the Claims Administrator, participating class members have claimed approximately 39.44% of the net settlement amount, or approximately $371,172.99. However, because the settlement provides that a minimum of $400,000 will be disbursed to participating class members, each participating class member's settlement payment will be proportionally increased. After the pro-rata increase, the average recovery under the settlement is approximately $401.61, and the highest is approximately $1,422.44. (Doc. 70-2, Francisco Dec., ¶ 6.)

Initially, the Court questioned Defendant's retention of unclaimed net settlement funds, which in this instance amounts to $552,250 ($952,250 - $400,000). The Court extensively questioned the parties regarding this retention amount at oral argument and requested supplemental briefing. (Doc.

77, 78.) Considering the briefs and the parties' arguments, the Court finds that the total amount offered in settlement favors final approval. In this instance, class members were notified not only of the gross settlement amount ($1,500,000), but also of the net settlement amount available for individual payments to class members to claim ($952,250), the minimum amount of the net settlement fund to be paid by Defendant ($400,000), and the retention of any unclaimed net settlement funds by Defendant. As discussed below, no class members objected to the proposed structure of the settlement agreement, which included Defendant's retention of funds, and only two class members opted out of the agreement. And, as discussed above, nearly 4,000 class members were adequately notified of this action and had the opportunity to participate. A higher participation rate would have increased the amount claimed by the class and paid by Defendant. Further, courts in this district have approved similar potential reversions (or retention) of class action settlement funds.[1] *See, e.g.*, *Schiller v. David's Bridal*, No. 1:10-cv-00616-AWI-SKO (E.D. Cal. Jun. 28, 2012) (approving a reversion of 45% of the net settlement fund); *Mendez v. Tween Brands, Inc.,* No. 2:10-cv-00072-MCE-DAD (E.D. Cal. Aug. 8, 2011) (approving a reversion of 50% of the net settlement fund); *Enabnit v. Petsmart, Inc.*, No. 2:07-cv-00165-JAM-DAD (E.D. Cal. Apr. 23, 2009) (approving a reversion of 70% of the amount set aside for payment to the class members); *Lewis v. Starbucks*, 2:07-cv-00490-MCE-DAD (E.D. Cal. Dec. 10, 2008) (approving 75% reversion of the net settlement fund).

<u>The Extent of Discovery Completed, and the Stage of the Proceedings</u>

The Court finds that the extent of discovery completed and the stage of proceedings favors final approval. Plaintiffs conducted investigation and research beginning shortly after the action was filed in 2013 and continuing for the next year-and-a-half. Plaintiffs' investigation encompassed formal and informal discovery, including depositions, document request, interrogatories, requests for admissions, and in depth interviews of class members. Plaintiffs received information and evidence regarding class member demographics, contact information, handbooks and procedure manuals, and employee time and wage records. (Doc. 70 at 10-11, 20-21.) This action settled following mediation, but before completion of briefing on Plaintiffs' class certification and before the matter proceeded to

---

[1] The Court may take judicial notice of court records in other cases. *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

1  additional fact discovery or trial.  The Court also notes that this litigation involved hard-fought issues
2  and strong advocacy on both sides.

3          <u>The Experience and Views of Counsel</u>

4          The Court finds that the experience and views of class counsel favor final approval.  Class
5  counsel, Capstone Law APC, employs seasoned class action attorneys who regularly litigate wage and
6  hour claims and have considerable experience.  Following a thorough investigation, Plaintiffs' counsel
7  were able to realistically assess the value of the claims and are of the opinion that the settlement is fair,
8  reasonable, and adequate, and is in the best interests of the class.

9          <u>The Reaction of the Class Members to the Proposed Settlement</u>

10          The Court finds that the reaction of class members to the proposed settlement also favors
11  settlement.  The deadline for class members to submit their claims or elect not to participate was
12  August 14, 2015.  Of the 4,068 putative class members, 996 filed valid claim forms, which is a
13  response rate of approximately 24.5% of the potential class.  (Doc. 70-2, Francisco Dec., ¶ 6.)  Only
14  two class members opted out (or 0.05% of the Settlement Class), and not a single class member
15  objected to the Settlement. (*Id.*) This level of participation is comparable to other wage and hour class
16  action settlements approved in this district.  *See Schiller v. David's Bridal*, No. 1:10-cv-00616-AWI-
17  SKO (district court approved settlement with a 23.41% response rate, 5 opt outs and no objections);
18  *Mendez v. Tween Brands, Inc.*, No. 2:10-cv-00072-MCE-DAD (district court approved a settlement
19  with an 11.24% response rate, 3 opt outs and no objections); *Enabnit v. Petsmart, Inc.*, No. 2:07-cv-
20  00165-JAM-DAD (district court approved a settlement with a response rate of 11.10%, 30 opt outs
21  and no objections); *Lewis v. Starbucks*, 2:07-cv-00490-MCE-DAD (district court approved a
22  settlement with a 20% response rate, 18 exclusions and no objections).

23          Plaintiffs also point out that they undertook a number of procedures designed to encourage
24  submission of claims.  These procedures included the following:  (1) updating the mailing addresses in
25  the National Change of Address database maintained by the U.S. Postal Service; (2) remailing notice
26  packets returned as non-deliverable to the forwarding address; (3) utilizing a skip-trace where no
27  forwarding address was available; and (4) mailing a postcard reminder to all non-responsive class
28  members.

<u>Arm's Length Negotiation and Absence of Collusion</u>

The settlement was presented to the Court only after the parties had engaged in mediation with Lynn Frank. The parties did not settle at mediation, but Ms. Frank provided the parties with a mediator's proposal, which the parties later accepted following certain modifications. The terms of the settlement are now in the Settlement Agreement.

Given the relief achieved and the risks and costs involved in further litigation, the negotiated settlement represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues. See Fed. R. Civ. P. 23(e)(2). Further, considering there was arm's-length bargaining; extensive investigation and discovery by experienced counsel; and no objectors, the Court concludes the settlement was presumptively fair, adequate and reasonable, and should be granted final approval. *See e.g., Harris v. Vector Marketing Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. 2011).

**II.    Attorneys' Fees**

With respect to attorneys' fees and costs, the Settlement Agreement provides that "Defendant will not oppose a request by Class Counsel for an award of Attorneys' Fees up to 30% of the Gross Settlement Amount (not to exceed $450,000), and for an award of costs up to $35,000." (Doc. 52-1, Ex. 1, Settlement Agreement ¶ 7.3.) On July 16, 2015, Plaintiffs filed a motion for an award of attorneys' fees in the amount of $450,000, and costs in the amount of $32,680. (Doc. 40 at 2.) The Court requested and received supplemental briefing from class counsel regarding the reasonableness of the anticipated fee award. (Docs. 74, 78.)

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In diversity actions, such as this one, federal courts apply state law to determine the right to fees and the method for calculating fees. *See Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011).

Under California law, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund." *Serrano v. Priest*, 20 Cal.3d 25, 34, 141 Cal.Rptr. 315, 569 P.2d 1303 (1977). A common fund results

when "the activities of the party awarded fees have resulted in the preservation or recovery of a certain or easily calculable sum of money - out of which sum or 'fund' the fees are to be paid." *Id.* at 35, 141 Cal.Rptr. 315, 569 P.2d 1303. Here, the Settlement Agreement creates a Gross Settlement Amount, i.e., a common fund, out of which reasonable attorneys' fees will be paid. (Doc. 52-1, Ex. 1, Settlement Agreement ¶¶ 7.1, 7.3.)

California courts employ two methods when calculating a reasonable award of attorneys' fees in common fund actions. *See Lealao v. Beneficial Cal., Inc.*, 82 Cal.4th 19, 27 (2000). The first method calculates attorneys' fees based on a percentage-of-the-benefit bestowed upon the class. *Id.* at 26 ("Percentage fees have traditionally been allowed in such common fund cases, although, as will be seen, the lodestar methodology may also be utilized in this context."). The second method utilizes a lodestar, which is determined by multiplying the hours counsel reasonably expended by a reasonable hourly rate, which may then be enhanced by a multiplier. *Id.* Regardless of the method, "[t]he ultimate goal . . . is the award of a 'reasonable' fee to compensate counsel for their efforts, irrespective of the method of calculation . . . . It is not an abuse of discretion to choose one method over another as long as the method chosen is applied consistently using percentage figures that accurately reflect the marketplace. *In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 557, 96 Cal.Rptr.3d 127 (2009).

"Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Id.* at 558, n. 13, 96 Cal.Rptr.3d 127 (internal citation omitted); *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n. 11 (2008). Here, the Settlement Agreement contemplates an award of attorneys' fees up to 30% of the Gross Settlement Amount. (Doc. 52-1, Ex. 1, Settlement Agreement ¶ 7.3.) This amount is slightly less than one-third of the common fund amount. Plaintiffs contend that the attorney fee amount in this case is reasonable under California law. Plaintiffs also assert that the request is reasonable under federal law.

According to the Ninth Circuit, an attorney fee of 25% of the recovery is the "benchmark" that should be awarded in common fund cases. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the

percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Where the primary basis of the fee award remains the percentage method, the lodestar may provide a check on the reasonableness of the percentage award. *Vizcaino*, 290 F.3d at 1050.

The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case. *Vizcaino*, 290 F.3d at 1048. In *Vizcaino*, the Ninth Circuit identified factors a district court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved, (2) the risk involved, (3) incidental or non-monetary benefits achieved, (4) lawyers' reasonable expectations, and (5) burden on attorney. *Id.* at 1048-50.

Class counsel asks for an upward adjustment of the 25% benchmark. The difference between the benchmark of 25% and the request for 30% is an additional $75,000 in attorneys' fees. Plaintiffs provide the following arguments concerning the relevant *Vizcaino* factors:

Results Achieved

Plaintiffs and their counsel contend that they have vindicated the rights of over 4,000 workers and the relief offered by the settlement is valuable when viewed against the difficulties of pursuing wage and hour cases. Plaintiffs also contend that the public interest is served and the class action likely will deter similarly situated employers.

Risk Involved

Plaintiffs assert that counsel assumed a contingency risk in prosecuting this action. Additionally, large scale litigation such as this is complicated and time consuming. Plaintiffs argue that counsel assumed additional risk because some cases have found wage and hour actions not suitable for class adjudication. *See, e.g., Ordonez v. Radio Shack*, No. 10-7060-CAS (JCGx), 2013 WL 210223, *6, 10 (C.D. Cal. Jan. 17, 2013) (court declined to certify class because individual issues predominated in rest break claims despite evidence of unlawful policy).

Non-Monetary benefits

No evidence of nonmonetary benefits is presented beyond assertions of public policy considerations or a potential deterrent effect.

13

Skill Required

Plaintiffs' attorneys regularly litigate wage and hour claims and have considerable experience settling wage and hour class actions. These attorneys investigated the claims, used Defendant's documents and data to assess potential exposure, developed theories of certification and liability after studying Defendant's policies and records, and identified labor code violations based on Defendant's data. Plaintiffs believe that the strong briefing on class certification paved the way for the eventual settlement.

Burden on Counsel

This case was entirely done on a contingency fee basis against a well-represented Defendant.

In addition to the foregoing arguments, Plaintiffs contend that a cross-check utilizing a lodestar analysis attests to the reasonableness of the requested attorneys' fees. The lodestar is calculated by multiplying "the number of hours the prevailing party reasonably expended on the litigation . . . by a reasonable hourly rate." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In considering rates, courts examine the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiffs calculated a lodestar amount totaling $557,853.50, based on Capstone attorney rates ranging from $395 per hour for associates and $695.00 for partners. Plaintiffs contend that Capstone's rates have consistently been approved by federal and state courts. *See, e.g., Klee v. Nissan North America, Inc.*, No. CV 12-08238 AWT (PJWx), 2015 WL 4538426, *13 (C.D. Cal. Jul. 7, 2015) (approving Capstone's rates ranging from $370 to $695 for senior attorneys). Plaintiffs therefore assert that their request for attorneys' fees is reasonable in light of the lodestar, which totals more than 30% of the common fund based on rates applicable to attorneys in the Los Angeles area.

In response to the Court's concern regarding the appropriate community for determining attorney rates, Plaintiffs believe they should be awarded the prevailing rates for Los Angeles, not Fresno. Plaintiffs contend that under governing California law, rates are determined by the prevailing rate in the market where counsel's office is located, rather than where the action was litigated. *See PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) (affirming fee award based on prevailing

14

market rate where counsel located). Notably absent from Plaintiffs' argument is reference to Eastern District cases. Pursuant to both Ninth Circuit authority and cases in the Eastern District, the "relevant community" for purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds. *See, e.g., Barjon v. Dallon*, 132 F.3d 496, 500 (1997); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 276 (E.D. Cal. 2014).

Class counsel has not provided the Court with any helpful information regarding the prevailing market rates for similar work in the relevant legal community. Recently, rates for the Fresno Division have been identified between $250 and $380, with the highest rates reserved for attorneys with more than 20 years of experience. *Sanchez v. Frito-Lay, Inc.*, 2015 WL 4662636, * 18 (E.D. Cal. Aug. 5, 2015); *Torchia*, 304 F.R.D. at 276. For those attorneys with less than 10 years of experience, the expected range is between $175 and $300 per hour, with attorneys having four and five years of experience being awarded $200 per hour. *Sanchez*, 2015 WL 4662636 at *18; *Torchia*, 304 F.R.D. at 276; *Rosales v. El Rancho Farms*, Case No. 1:12-cv-01934-AWI-JLT, 2015 WL 4460918, *24-25 (E.D. Cal. Jul. 21, 2015) (applying rate of $380/hour for attorneys in practice 20 years or more; $350/hour for attorneys in practice between 15 and 20 years; $300/hour for attorneys in practice between 10 and 15 years; $225/hour for attorneys in practice between 5 and 10 years; $175/hour for attorneys in practice less than five years) (findings and recommendations adopted October 2, 2015).

Applying Fresno Division rates based on the $250-$380 range, and consistent with those assigned in *Rosales*, the lodestar cross-check calculation is as follows:

| Lawyer | Title | CA Bar | Rate | Adjusted Fresno Rate | Hours | Fees |
|---|---|---|---|---|---|---|
| Raul Perez | Partner | 1994 | $695 | $380 | 64.1 | $24,358.00 |
| Melissa Grant | Senior Counsel | 1999 | $670 | $350 | 271 | $94,850.00 |
| Orlando Arellano | Fmr Senior Counsel | 2004 | $545 | $300 | 19.5 | $5,850.00 |
| Arnab Banerjee | Associate | 2007 | $470 | $225 | 142.1 | $31,972.50 |
| Eduardo Santos | Associate | 2007 | $470 | $225 | 117.6 | $26,460.00 |
| Jamie Greene | Associate | 2007 | $470 | $225 | 33.8 | $7,605.00 |
| Frank Gatto | Fmr Associate | 2010 | $395 | $225 | 420.3 | $94,567.50 |
| Karen Wallace | Associate | 2010 | $395 | $225 | 43.4 | $9,765.00 |
| | | | | **TOTAL** | | **$295,428.00** |

The requested common fund fees of $450,000 are significantly higher than the lodestar cross-check, and the Court finds it appropriate to reduce the fee request.[2] In doing so, the Court recognizes that the cross-check does not account for $30,000 in fees reportedly written off by Mr. Perez or any additional fees (reported at $15,000) expended on the motion for final approval, preparation for the final approval hearing and supplemental briefing. The cross-check also does not account for any enhancement to the base lodestar amount.

In their original briefing, Plaintiffs asserted that they were not asking for a lodestar enhancement or multiplier, but would be entitled to one in the 3-4 range to compensate for the contingency risk. Plaintiffs relied on *Vizcaino*, which approved a multiplier of 3.65 and noted that courts routinely enhance lodestar amounts to reflect the risk of non-payment in common fund cases. Plaintiffs also argued that a lodestar adjustment would be justified in light of the delayed payment of fees. *Vizcaino*, 290 F.3d at 1050 (long duration of case identified as factor justifying 28 percent fee).

A "lodestar multiplier" is calculated by dividing the percentage fee award by the lodestar calculation. *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). Here, the multiplier would be 1.52, which is calculated by dividing $450,000 by $295,428. The Court finds this multiplier to be slightly high, and recommends a multiplier of 1.5. Courts in this district have approved multipliers in this range. *See, e.g., Franco*, 2012 WL 5941801 at *22 (1.31); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, *10 (E.D. Cal. Oct. 31, 2012) (1.28); *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW, 2011 U.S. Dist. LEXIS 70390 (E.D. Cal. June 30, 2011) (1.75 multiplier).

Taking into account the original request for an upward adjustment of the percentage-of-fund amount from 25% to 30%, the significantly lower lodestar cross-check, and application of a 1.5 multiplier, the Court recommends partially granting attorneys' fees in the amount of $443,142, which is 29.5% of the gross settlement amount.

///

///

---

[2] The Court also finds that common fund is not the appropriate measure of attorneys' fees in this case in light of the significant reversionary amount to Defendant fully anticipated by the parties.

16

**III.     Costs**

Counsel asks for an award of costs of $32,680.23, which includes court fees, court reporter charges, mediation fees and travel expenses.

Attorneys are entitled "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994) (citation omitted). Plaintiffs should support an expense award by submitting an itemized list of their expenses by category and the total amount advanced for each category, which allows the Court to assess whether the expenses are reasonable. *See*, *e.g.*, *Lopez v. Bank of America, N.A.*, 2015 WL 5064085, * 7 (N.D. Cal. Aug. 27, 2015).

Here, Plaintiffs provided the following breakdown of costs:

| **Cost and Expense Categories** | **Amount** |
|---|---:|
| Copying, Printing & Scanning and Facsimiles | $347.25 |
| Court Fees, Filings & Service of Process | $2,263.21 |
| Court Reporters, Transcripts & Depositions | $2,731.35 |
| Delivery & Messenger (UPS, FedEx, messenger, etc.) | $1,064.47 |
| Expert & Consulting Services | $240.00 |
| Information Technology Services | $72.59 |
| Mediation Fees | $10,275.00 |
| Postage & Mailings | $23.05 |
| Private Investigators for Locating Witnesses | $7,445.14 |
| Research Services (PACER, Lexis, etc.) | $7.10 |
| Travel & Lodging (Airfare, Mileage, Parking, Hotel, etc.) | $8,211.07 |
| **Total** | **$32,680.23** |

(Doc. 68-1, Declaration of Raul Perez at ¶ 19.) Upon review, it appears that the primary expenses incurred resulted from mediation, travel and locating witnesses. As a general matter, the Court finds the charged costs reasonable, and less than the $35,000 contemplated by the Settlement Agreement. The Court will recommend granting the request for costs in the amount of $32,680.23.

**IV.     Enhancement Awards**

Named plaintiffs, as opposed to class members who are not named plaintiffs, are eligible for reasonable incentive payments.  *Staton*, 327 F.3d at 977.  Incentive awards "are discretionary ... and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (internal citation omitted).  District courts must evaluate incentive awards individually, using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

Plaintiffs request the court confirm the enhancement award agreed to be paid of $7,000 each to Jerome Davis and Priscilla Humphrey and $2,500 each to Jennifer Carrow and Sabrina Rowell.  The requested $7,000 each for Davis and Humphrey is more than the typical enhancement awards in the Ninth Circuit, where $5,000 is presumptively reasonable.  *Harris v. Vector Marketing Corp.*, 2012 WL 381202, *7 (N.D. Cal. 2012).  Plaintiffs assert that $7,000 is appropriate because Davis and Humphrey regularly conferred with counsel to discuss the status of the case, offer input and assist in evidence gathering, they reviewed and approved the class action complaint and attended their depositions, they also remained on-call to assist in settlement negotiations and review the proposed settlement agreement and they both spent more than 50 hours each assisting counsel.  (Docs. 68-2, 69.)

In this instance, the Court finds that adjusting the incentive upward from $5,000 to $7,000 is appropriate for the time and effort spent in connection with this litigation and presumptively reasonable.  Both Davis and Humphrey were active in the litigation, they regularly assisted counsel, they were deposed, they were on-call during the course of settlement negotiations and they participated in review of the proposed settlement.

The Court also finds that the lower incentive award of $2,500 each requested for Jennifer Carrow and Sabrina Rowell to be appropriate and reasonable.  Both individuals spent 15 to 20 hours assisting counsel in the prosecution of the lawsuit. (Docs. 68-3, 68-4.)  As this is approximately 1/3 of

the time spent by Davis and Humphrey, an incentive award approximating 1/3 of the award to Davis and Humphrey, or $2,500, is reasonable.

## CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' Motion for Final Approval of the Settlement Agreement be GRANTED;

2. The terms of the proposed Settlement Agreement be found to be fair, adequate and reasonable and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

3. Plaintiffs' request for certification of the Settlement Class be granted, and the class defined as all persons who are or were employed by Defendant in a non-exempt, hourly-paid position at any of Defendant's California Famous Footwear retail locations from June 4, 2009 to May 12, 2015, be certified for settlement purposes;

4. For purposes of the settlement, the above-defined settlement class be found to meet all of the requirements of Rule 23(a) and 23(b)(2).

5. The notice provided to the settlement class members, as well as the means by which it was provided, constitutes the best notice practicable under the circumstances and is in full compliance with the United States Constitution and the requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure. Further, that such notice fully and accurately informed settlement class members of all material elements of the lawsuit and proposed class action settlement, and each member's right and opportunity to object to the proposed class action settlement;

6. Plaintiffs Jerome Davis, Priscilla Humphrey, Jennifer Carrow, and Sabrina Rowell be appointed as suitable representatives for the Settlement Class;

7. Capstone Law APC be appointed as counsel for the Settlement Class;

8. The settlement of civil penalties under PAGA in the amount of $5,000 be approved, with seventy-five percent (75%), or $3,750, paid to the California Labor and Workforce Development Agency and the remaining twenty-five percent (25%), or $1,250, be allocated to Participating Class Members.

9. Claims administration expenses in the amount of $46,000 be approved for payment to Simpluris, Inc.;

10. Defendant be ordered to pay Class Members pursuant to the procedure described in the Settlement Agreement;

11. Plaintiffs' motion for attorneys' fees, costs and expenses, and class representative incentive awards be GRANTED IN PART and DENIED IN PART as follows:

    a. Reasonable attorneys' fees in the amount of $443,142 and costs in the amount of $32,680 be awarded to Plaintiffs' counsel, Capstone Law APC; and

    b. Incentive awards of $7,000 each be awarded to Jerome Davis and Priscilla Humphrey, and incentive awards of $2,500 each be awarded to Jennifer Carrow and Sabrina Rowell consistent with the terms of the Settlement Agreement; and

12. This action be dismissed and judgment entered in accordance with the terms of the agreement; however, the Court shall retain continuing jurisdiction to interpret, implement and enforce the settlement, and all orders and judgment entered in connection therewith.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 3, 2015**           /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE